IN THE UNITED STATED DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

VIRGINIA MENDEZ,

    Plaintiff

vs.                                                                                                      Civ. No. 09-716 LH/RLP

MICHAEL J. ASTRUE,
Commissioner of the Social Security Administration,

    Defendant.

## MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION[1]

    Plaintiff, Virginia Mendez ("Plaintiff" herein) appeals from the final decision of the Commissioner of the Social Security Administration denying her application for Supplemental Security Income benefits ("SSI" herein), filed pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§1381-1383c. This matter has been fully briefed by the parties and has been referred to the undersigned for analysis and recommendation. (Docket No. 8).

    Plaintiff's application was denied initially and by an administrative law judge ("ALJ" herein) following a hearing. (Tr. 58, 20-25). The Appeals Council declined to review the ALJ's decision, thus the final decision of the Commissioner is the ALJ's decision. Plaintiff seeks review of that final decision pursuant to 42 U.S.C. § 405(g).

    For the reasons stated herein, I recommend that Plaintiff's Motion be Granted, and that this

---

[1] Pursuant to 28 U.S.C. §636(b)(1), within fourteen [14] days of being served with a copy of this Analysis and Recommended Disposition, either party may file written objections to such proposed Analysis and Recommended Disposition. A party must file any objection within the fourteen [14] day period if that party seeks appellate review of the Analysis and Recommended Disposition. Failure to timely file objection with the court will be deemed a waiver of appellate review. *Hill v. SmithKline Beecham Corp.,* 393 F.3d 1111,1114 (10th Cir. 2004).

matter be remanded to the Commissioner of the Social Security for additional proceedings.

## Standard of Review

This court does not review Plaintiff's claim *de novo*. The standard of review in social security appeals requires this court to determine whether the Commissioner's final decision is supported by substantial evidence. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir.1993) (citations omitted). If supported by substantial evidence, the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 1422, 28 L.Ed.2d 842 (1971). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* at 401, 91 S.Ct. at 1427. Additionally, the court reviews the Commissioner's final decision to determine if the ALJ applied the correct legal standards. *Castellano v. Secretary of Health and Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994).

## Sequential Evaluation Process

"To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." *Thompson v. Sullivan*, 987 F.2d at 1486 (citing 42 U.S.C. § 423(d)(1)(A)). The Commissioner has established a five step sequential evaluation process to ascertain whether a claimant is entitled to disability benefits. *Id.* The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

> Step one requires the agency to determine whether a claimant is presently engaged in substantial gainful activity. If not, the agency proceeds to consider, at step two, whether a claimant has a medically severe impairment or impairments. An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. At step three,

> the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition listed in the appendix of the relevant disability regulation. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work. Even if a claimant is so impaired, the agency considers, at step five, whether she possesses the sufficient residual functional capability to perform other work in the national economy.

*Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir.2009) (quotations and citations omitted). The claimant bears the burden of establishing a *prima facie* case of disability at steps one through four. See *Williams v. Bowen,* 844 F.2d, 748, 751 n. 2 (10th Cir. 1988). If the claimant successfully meets this burden, the burden of proof then shifts to the Commissioner at step five. Id. at 751.

The ALJ found that Plaintiff had not engaged in substantial gainful activity since June 6, 2006 (Tr. 22); that she had "severe" impairments of back pain and obesity (Tr. 22), but that the medical evidence of record failed to support the presence of a "severe" mental impairment. (Tr. 23); and that her impairments did not meet or equal a listed impairment. He concluded that she retained the RFC for the full range of "light" work as defined in 20 C.F.R. §416.967(b)  (Tr. 23) and therefore could perform her past relevant work as a security guard, and was not disabled. (Tr. 25).

### Issues Raised

Plaintiff raises the following issues on appeal:

1) Whether the ALJ erred at step two, by ignoring evidence and determining that Plaintiff's mental impairment was not "severe."

2) Whether the ALJ erred at step four by failing to apply the legal framework of Social Security Ruling 86-62 and the precedent in *Winfry v. Chater,* 92 F.3d 1017 (10th Cir. 1996), in finding that Plaintiff's prior work was as a security guard.

### Factual background- Medical

Plaintiff obtained no medical or mental health care during the time period under review.

3

Her medical records are limited to two consultative examinations obtained by the Commissioner.

Greg McCarthy, M.D. examined Plaintiff on August 19, 2006. (Tr. 135-137). She told Dr. McCarthy that she had a twelve-year history of low back pain which she treated with a cream, that she could stand for 10-15 minutes at a time, walk for an hour, sit for an hour, lift ten pounds occasionally, drive, sweep, shop, mop vacuum, cook and wash dishes. Her physical examination was normal with the exception of her weight, a reduced range of motion in the back and her blood pressure.[2] Dr. McCarthy concluded that:

> It would appear from her exam that she would have some decreased range of motion and some difficulties in carrying and lifting, bending, stooping or crouching if done on a repetitive basis for more than a few hours per day. However, she may be able to sit, stand and walk for alternate periods given rest breaks. She would be able to walk short distances but would have difficulties with long distances and uneven terrain given her decreased range of motion and obesity. She would have no difficulties reaching, handling or grasping . . .

(Tr. 137).

Based on Dr. McCarthy's evaluation, an agency physician determined that Plaintiff retained

---

[2] "The patient stands 5 feet 3-½ inches tall and weighs 180 pounds. Pulse in 94 per minute. Blood pressure is 149/97. We have a well-developed, well-nourished female appearing her stated age in no acute distress. She has no difficulty ambulating about the room. She has no difficulty getting on and off the exam table and understands all commands and is cooperative during the exam. . . .

"MUSCULOSKELETAL: Pulses are palpable in upper and lower extremities. Gait is normal. Grip strength is 5/5 in the upper extremities. Range of motion of the following joints is all normal right and left: elbow, forearm, wrist, shoulder and cervical spine. Lumbar range of motion is 60 flexion, lateral bend on the right 20, lateral bend on the left 20 and extension 20. Hip range of motion is normal right and left. Knee range of motion is normal right and left. Straight leg raise is negative sitting and supine. The patient is able to lay straight back on the table and resume sitting position with some slight difficulty. She was able to walk on her heels and walk on her tiptoes. She was able to squat. She was able to do the heel-to-toe walk. There are no varicosities or ulcerations.

"NEUROLOGIC: The patient was alert and oriented times three. Motor strength was 5/5 in all proximal muscle groups. There is no atrophy noted. Sensation is intact to light touch. Hallus strength is both great toes. Cerebellar, Romberg is negative. Cranial nerves II through XII were intact." (Tr. 136-137).

the residual functional capacity consistent with the full range of light work (Tr. 140-147), and Plaintiff's application for benefits was denied. (Tr. 58).

Sometime after August 31, 2007, Plaintiff submitted an unsigned report indicated that she was "now getting dizzy" and "can't pick up like I need to." (Tr. 93, 94). She listed no doctors, medical treatment or medications.

David LaCourt, PhD conducted a psychological evaluation on Plaintiff on November 11, 2007. (Tr. 132-134). Plaintiff told Dr. LaCourt that she was living with her daughter and grandchildren after being evicted from her mobile home, and considered herself homeless. She did some cleaning, but that sweeping caused pain in her back and neck. She had not sought medical care and took no regular medications. Dr. LaCourt noted that Plaintiff was appropriately dressed, had normal grooming and general personal hygiene, displayed functional posture and gait, could go up and down several steps at a mildly slow pace with light touch on the hand rail, and was able to sit throughout the evaluation without notable fidgeting or discomfort. Mental status examination documented:

- Attention in the normal range with commensurate level of general concentration.
- Oriented to time, place, person and general situation.
- Recall and memory grossly intact.
- Affect normal with congruent, normal mood.
- Thought content appropriate to mood and circumstances, apart from mild personalization and persecution associated with loss of her mobile home.
- Speech fully understandable with no noted tone, loudness or pacing issues.
- Organization moderately loosened, but she did not derail.
- Repetition of story regarding loss of mobile home.

- Some somatic centering regarding back and neck, but no other reported or exhibited untoward preoccupations.

- No evidence of hallucinatory or delusional process.

- Fund of general information average for level of education and reported involvement with current events, consistent with average intellectual functioning. No evidence or recent decrement in prior levels of intellectual functioning.

Dr. LaCourt diagnosed dysthymic disorder, a condition defined as "a chronic disturbance of mood characterized by mild depression or loss of interest in usual activities." *Stedman's Medical Dictionary,* 569 (28th ed. 2006). In terms of Plaintiff's functional mental capabilities, Dr. LaCourt indicated the following:

- Understanding and remembering detailed/complex instructions: **not limited**; very short/simple instructions: **not limited**.

- Sustained concentration/task persistence, for carrying out instructions: **moderate limitation**; attending and concentrating: **mild limitation**; working without supervision: **moderate limitation** for routinely-performed tasks (associated with her report of taking of frequent breaks and at times not finishing tasks).

- Social interaction, with the public: not limited; with coworkers: **not limited**; with supervisor: **not limited**.

- Adaptation to changes in the workplace: **not limited**: aware of normal hazards/reacting properly: **not limited**.

- Use of public transportation/travel to unfamiliar places: **mild limitation** - she said she does not drive although she presented a valid driver's license.[3]

- Alcohol/illicit substance involvement: **none known**.

- Able to manage benefits to her own best advantage: **yes**.

(Emphasis added).

---

[3] At her hearing before the ALJ, Plaintiff testified that driving a car with a standard transmission bothered her back, and she had trouble seeing well enough to drive. (Tr. 53-54).

Plaintiff, through her attorney, submitted a disability report on January 22, 2008. (Tr. 123-130). This report indicated that she had seen no doctors, other than Drs. McCarthy and LaCourt (Tr. 124), had no appointment for medical care (Tr. 124), took no medication (Tr. 126), that she couldn't "pick up like (she) used to," (Tr. 127), but otherwise there had been no change in her daily activities. (Tr. 128).

At her administrative hearing, Plaintiff stated she hadn't sought medical care for her back since 1999 because she could not afford a $5.00 co-pay. (Tr. 45-46). She stated that she suffered back pain, could sit for only 5 minutes, stand for only 10 minutes walk for only 15 minutes, and could not lift five pounds. (Tr. 44, 46-49, 54). She stated she was depressed and had problems with memory and concentration. (Tr. 50-52).

<u>Factual background - past relevant work</u>

The ALJ found that Plaintiff was capable of performing her past relevant work as a security guard. Plaintiff contends that she never worked as a security guard. In work background report submitted with Plaintiff's application for benefits, she stated that from June 2000 to June 6, 2006 she worked for Apollo Realty, cooking, cleaning, picking up weeds, and cleaning mobile homes. (Tr. 87). In a contemporaneous report, this job was titled "Guard," which Plaintiff performed for 25 hours per week at a rate of $9.00 per hour. (Tr. 114). She also received an housing allowance. (Tr. 117). In an undated disability report, this job was titled "Guard for property" which Plaintiff performed for 20 hours per week. (Tr. 105). None of the duties, responsibilities or physical/mental requirements for this job were listed in the report. (Tr. 104-106). At the hearing before the ALJ Plaintiff testified that she "used to work for (her) landlord . . . cleaning trailer parks" and that she "didn't make much, like 20 a month" plus her rent, or a portion of her rent. (Tr. 36, 38-39). In an internal form prepared by the Social Security Administration, Plaintiff's most recent employment

was described as "a guard for a mobile home park." (Tr. 120). No description of the job duties was included.

## Discussion

### The ALJ did not err at step two of the sequential evaluation process.

Step two of the sequential evaluation process involves a determination of whether "the claimant has a medically severe impairment or combination of impairments. *Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 2291, 96 L.Ed. 2d 119 (1987). This determination is governed by certain "severity regulations," and is based on medical factors alone. 20 C.F.R. §416.920( c). The severity regulations require that a claimant make a threshold showing that her medically determinable impairment or combination of impairments significantly limits her ability to do basic work activities. *Hawkins v. Chater,* 113 F.3d 1162, 1169 (10th Cir.1997), 20 C.F.R. §416,821(b). A claimant's showing at step two is *de minimis*, that is, the claimant need only be able to show at this level that the impairment would have more than a minimal effect on his or her ability to do basic work activities. [4] *Williams v. Bowen*, 844 F.2d 748, 751(10th Cir. 1988). If this showing is not make, benefits are denied at step two. *Id.*. If the claimant presents medical evidence and makes the *de minimus* showing of medical severity, the decision maker proceeds to step three. Id.

The ALJ in this case concluded that Plaintiff suffered from severe impairments of back pain and obesity, and proceeded to the remaining steps of the sequential evaluation process. Therefore,

---

[4] Basic work activities are "abilities and aptitudes necessary to do most jobs," 20 C.F.R. § 416.921(b), including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgement, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting." Social Security Ruling 85-28, 1985 WL 56856 at *3; *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir.2004).

I find no error at step two.

Plaintiff's real complaint is that the ALJ did not include moderate mental limitations discussed in Dr. LaCourt's evaluation in determining her residual functional capacity ("RFC"herein).  Social Security Ruling 96-8p requires that all allegations of physical and mental limitations be considered in assessing RFC.  1996 WL 374184, *5.  This evaluation necessarily includes assessment of credibility as well as consideration of medical evidence.  Plaintiff does not challenge the ALJ's finding that her testimony regarding the extent of her limitations was not credible.  (Tr. 23-24).  The ALJ specifically addressed Dr. LaCourt's findings of moderate limitation, found them based not on objective findings, but solely on Plaintiff's statement that she took frequent breaks and at times did not finish tasks:

> Ms. Mendez has no mental health treatment history and made no mention of mental health issues at the initial or reconsideration levels. . . Dr. LaCourt's examination did not elicit any objective findings suggesting that Ms. Mendez's mental status is significantly compromised, nor did she endorse any but minimal symptoms.  When her mental status is evaluated under section 12.04 of the regulations, I find "mild" limitations in her activities of daily living and no limitations in social functioning. Ms. Mendez engages in a wide range of routine activities independently, appropriately, and effectively, and is able to interact appropriately with others.  Dr. La Court' notation regarding Ms. Mendez' ability to work without supervision is based on her own reports regarding taking frequent breaks and not finishing tasks. More telling are her statements in the record regarding her actual activities such as an ability to drive, sweeping, shopping, mopping, vacuuming, cooking, and washing dishes.  The performance of these activities in not inconsistent with the performance of many of the basic activities of work, and Ms. Mendez worked until her place of employment closed.  Other than being an inconsistent historian, the objective evidence supports no more than "mild" limitations in concentration, persistence, and pace. . .

(Tr. 22).

I find that the ALJ applied correct legal principles in assessing Plaintiff's credibility, and that his assessment was supported by substantial evidence.  I further find that substantial evidence supports the ALJ's finding that Plaintiff had only mild limitations in concentration, persistence and

pace.

### The ALJ failed to apply correct legal principles at step four of the sequential evaluation process.

At step four, the ALJ is required by Social Security Ruling 82-62, 1975-1982 West's Soc. Sec. Reporting Serv., Rulings, 809, 812-813 (1983) to make findings of fact regarding: 1) the individual's residual functional capacity, 2) the physical and mental demands of prior jobs or occupations, and 3) the ability of the individual to return to the past occupation given his or her residual functional capacity. *Henrie v. United States Department of HHS*, 13 F.3d 359, 361 (1993). At each of these three phases, the ALJ must make specific findings. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir.1996).

The ALJ concluded that Plaintiff had the mental and physical RFC to perform the work of a security guard as she actually performed it, and as it is generally performed in the national economy. (Tr. 25). At no point, however, did the ALJ discuss or make any findings as to what those physical and mental demands were. This was error, compounded by the lack of substantial evidence that Plaintiff's prior work could reasonably be defined as that of a security guard.[5]

> At the second phase of the step four analysis, the ALJ must make findings regarding the physical and mental demands of the claimant's past relevant work. When the ALJ essentially skips the second phase of the step four analysis by not making any findings regarding the physical and mental demands of claimant's past work, either as performed or as it is generally performed in the national economy, then the case shall be remanded in order for the ALJ to make the specific factual findings regarding the demands of claimant's past relevant work.

*Campbell v. Astrue*, 525 F.Supp. 2d 1256, 1264 (D. Kan. 2007) (citation omitted).

The ALJ erred in failing to make specific, on-the-record findings regarding the physical and

---

[5]The only evidence of record describing of the duties and demands of Plaintiff's past work is that it involved cooking, cleaning, picking up weeds, and cleaning mobile homes. (Tr. 87), and "cleaning trailer parks." (Tr. 36).

mental demands of plaintiff's past relevant work

## Recommended Disposition

For the reasons stated above, I recommend that Plaintiff's Motion to Reverse or Remand Administrative Agency Decision (Docket No. 23) be granted, and that this case be remanded to the Commissioner for additional proceedings at step four, and if indicated, step five of the sequential evaluation process.

                                          Richard L. Puglisi
                                          Chief United States Magistrate Judge.